```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND
```

SMARTDESKS, INC., et al.         *

       Plaintiffs              *

       vs.                     *   CIVIL ACTION NO. MJG-05-3456

CBT SUPPLY, INC., et al.         *

       Defendants              *

\*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM AND ORDER

The Court has before it Defendants' Motion to Compel Production of Documents [Paper 84] and the materials submitted relating thereto.  The Court has held a hearing and had the benefit of the arguments of counsel.

I.   BACKGROUND

Plaintiffs, Smartdesks, Inc. ("Smartdesks") and the Estate of Peter Stengel ("Stengel") sue Defendants CBT Supply, Inc. ("CBT") and Jeffrey Korber ("Korber") on various theories including: copyright infringement; various violations of the Lanham Act; "cyberpiracy;" wrongful taking; as well as common law and Maryland unfair competition; trademark infringement; and deceptive practices.  First Amended Complaint [Paper 53].  Defendants have counterclaimed on various theories including: copyright infringement; federal and common law unfair

competition; domain name "cyberpiracy;" indemnification; and fraud on the Patent and Trademark Office.  Answer to First Amended Complaint and Counterclaim [Paper 55].

In the late 1990's Stengel and Korber entered into a business relationship relating to the design and sale of technology classrooms, furniture, and other products, including items referred to as "smart desks."  Inasmuch as the parties differ greatly as to the substantive facts, it suffices, for the present, to note that, by December of 2005, Stengel was in the process of preparing to sue Defendants.

The instant motion relates to an E-mail sent by Stengel's counsel on December 21, 2005 (the "December 21 E-mail") that contained therein, and referred to, several earlier E-mails between Stengel and counsel.  There is no doubt that the December 21 E-mail constitutes an attorney-client communication that would be subject to the attorney-client privilege unless the privilege were found to have been waived.  United States v. Aramony, 88 F.3d 1369 (4th Cir. 1996).

Defendants contend that the privilege was waived by (1) Stengel's causing disclosure to persons outside the privilege on December 21, 2005, (2) Plaintiffs' placing an underacted copy of the December 21 E-mail on the record of this case in a deposition

of Korber and (3) Plaintiffs' affirmative use of the document (or a part thereof) as the basis for claims made in their Complaints.

II. DISCUSSION

    A. Waiver

        1. December 21, 2005

From the December 21 E-mail it appears that at least the following E-mails were sent between Stengel and his counsel:

    12/9/05 (6:28 p.m.) Counsel to Stengel

        Sending draft caption and 3 paragraphs of Compliant;

    12/9/05 (7:46 p.m.) Counsel to Stengel

        Including, at least, a question as to certain facts and stating advice as to whether to separate federal and state claims;

    12/12/05 ( 12:47 a.m.) Stengel to counsel

        Sent with return address to Stengel's private E-mail account,

        "From: Peter Stengel [mailto:pstengel@comcast.net]"

        Responds to second 12/9/05 E-mail, attaches "about 20 paragraphs" that are not included in the December 21 E-mail and asks counsel's advice;

    12/20/05 (8:54 p.m.)  Counsel to Stengel

        Asks question about "niche direct" and comments on Korber domain name registrations;

    12/20/05 (8:59 p.m.)  Counsel to Stengel

>    Asks Stengel to tell him what happened after Defendant
>    made a change of contact for certain domain name;
>
> 12/21/05 (12:21 p.m.) Stengel to counsel
>
>    Sent from the CBT's group E-mail address, which
>    Stengel[1] knew that all incoming E-mails are
>    automatically forwarded to at least five CBT employees,
>
>    "From: Peter Stengel [mailto:design@smartdesks.com]"
>
>    Lengthy communication regarding pertinent facts,
>    responses to counsel's questions etc., including
>    address of Stengel's "new company" web site;
>
> 12/21/05 (1:02 p.m.) Counsel to return address
>
>    E-mail goes to at least 5 CBT employees,
>
>    Gives advice re: suit timing, domain names listed by
>    CBT, and dealing with vendors.

Upon receipt of the December 21 E-mail at least one CBT employee notified Stengel and/or counsel of the receipt.  Counsel promptly claimed a privilege as to the document.

Inasmuch as the instant case presents federal claims, the issues presented herein are governed by federal common law.  3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 501.02[2][b] (Joseph M. McLaughlin ed., 2d ed. 2003).

The United States Court of Appeals for the Fourth Circuit has not yet considered the doctrine of inadvertent disclosure in a civil case. See  Hopson v. Mayor and City Council of Baltimore,

---

[1] In fact, Stengel set up this E-mail address to insure the dissemination of incoming E-mails.

4

232 F.R.D. 228, 236 (D. Md. 2005); F.C. Cycles Int'l, Inc. v. Fila Sports, S.p.A., 184 F.R.D 64, 76 (D. Md. 1998).  However, from its decisions in the grand jury context, it appears that the Court has adopted the "strict accountability" approach followed by the Federal Circuit, the D.C. Circuit, and the First Circuit. In re Martin Marietta Corp., 856 F.2d 619 (4th Cir. 1988); In re Grand Jury Proceedings, 727 F.2d 1352 (4th Cir. 1984).  Under this approach, even an inadvertent disclosure of an otherwise privileged document will consitute a waiver of the privilege. Accordingly, the fact that Stengel and/or counsel inadvertently sent an otherwise privileged E-mail to persons outside the scope of the privilege effected a waiver of the privilege.

Even if the Fourth Circuit were to adopt the "balancing test" approach followed by some other courts, the result would be the same in the instant case.  Under the balancing test approach, the Court must find that there was a disclosure in spite of the fact that Stengel had taken reasonable care to preserve the confidentiality of his attorney-client communications.  F.D.I.C. v. Marine Midland Realty Credit Corp, 138 F.R.D. 479 (E.D.Va. 1991).  In the instant case, Stengel did not take reasonable care.  Of all people, Stengel had to know the effect of sending an E-mail from "design@smartdesks.com" so as to evoke a reply to that address.  Moreover, the very E-mail at

5

issue, includes E-mails to counsel that were sent from Stengel's private E-mail address so that a reply would be sent to him alone.

Of course, neither Stengel or his counsel subjectively intended to make a disclosure of the December 21 E-mail sent to anyone other than Stengel. However, the absence of such an intent does not preserve the privilege in the instant case.

Accordingly, the Court finds that the attorney-client privilege with regard to the December 21 E-mail was waived on December 21, 2005 when counsel sent the E-mail to design@smartdesks.com and it was received by several CBT employees.

### 2. Deposition Use

Little discussion appears warranted with regard to the effect of Plaintiffs' use of an unredacted copy of the December 21 E-mail as an exhibit at Korber's deposition.

First of all, the attorney-client privilege in regard to the document had been waived by its disclosure on December 21, 2005. Second, even if the privilege had not previously been waived, it would have been waived by the privilege holder's unnecessary[2]

---

[2] Plaintiff's counsel could have questioned Korber quite adequately without waiving the privilege. For example, he could have: used a redacted version adequate to permit questioning as

6

action at the deposition. Indeed, there is authority holding that even the use of an otherwise privileged communication <u>by an adverse party</u> without objection by the privilege holder waives during a deposition the privilege. <u>Hawkins v. Stables</u>, 148 F.3d 379 (4th Cir. 1998); <u>F.C. Cycles Int'l, Inc. v. Fila Sport, S.p.A</u>., 184 F.R.D. 64 (D. Md. 1998).

### 3. Claim Reliance

To the extent that Plaintiff was utilizing the December 21 E-mail to support a claim or defense it placed in issue, there would be another ground for finding a waiver of the privilege. In particular, if Plaintiffs contend that the December 21 E-mail was the source of Defendants' obtaining certain evidence, they would have to waive the privilege at least with respect to the relevant portions of the document.

Inasmuch as the Court holds that there was a waiver of the privilege as to the entire December 21 E-mail, it is not necessary to discuss whether there was also a waiver by virtue of any reliance upon the document to support a claim or defense.

---

to whether there was inappropriate access and/or sought a Protective Order permitting use of specific portions without making a plenary waiver etc.

B.   <u>Consequences of Waiver</u>

The Court, having held that the attorney-client privilege in the December 21 E-mail was waived on December 21, 2005, it is necessary to consider the consequences of the waiver.

Of course, Defendants were, and are, entitled to utilize the December 21 E-mail in the course of this case. The question now presented is the extent to which the privilege waiver with regard to the December 21 E-mail, results in a loss of otherwise available privilege protection for other attorney-client communications. This question now arises in the specific context of Defendants' instant motion to compel production of documents described in Requests for Production 27 and 28.

The requests at issue seek production of:

> 27.   All documents concerning all of the subject matter in the December 21 E-mail including, but not limited to, all documents concerning the preparation and drafting of Plaintiffs' Complaint.
>
> 28.   All documents concerning Plaintiffs' contention that the December 21 E-mail was stolen.

The Court finds that Request 27, as drafted, is too broad to enable a meaningful response that would include a "privilege log" so that any scope of waiver issues could be addressed. Defendants will be given an opportunity to submit replacement Requests.

Request 28 appears to be moot. Plaintiffs' counsel stated on the record that there are no documents known to him to support the contention that the December 21 E-mail was stolen by Defendants. In view of the Court's holding that the attorney-client privilege was waived at the time the Defendants received it, there is no viable contention that it was stolen. The Court does not, however, foreclose replacement requests that may be directed to documents supporting any allegation that other E-mails were "stolen."

In drafting replacement Requests, Defendants' counsel should seek to be as precise possible. In reading the December 21 E-mail itself, it is apparent that there are documents that can specifically be requested. For example, the December 21 E-mail includes portions of other E-mails on the same subjects. Moreover, there is in the December 21 E-mail reference to an attachment relating to the subject matter of the E-mail. In any event, sweeping requests seeking everything concerning Plaintiffs' claims are not likely to be enforced.

The Court notes its present inclination[3] to limit the scope of the waiver to otherwise privileged communications made <u>prior to</u> the waiver. It appears that to have the waiver extent forward

---

[3] Of course, subject to briefing and argument on the issue.

in time would prevent Plaintiffs from having any further privileged communications regarding the subjects in the December 21 E-mail. If Defendants' counsel frames any request based upon the contention that the waiver extends to post-December 21, 2005 communications, they must be prepared to provide authority addressing the timing issue and supporting their position.

## III. CONCLUSION

For the foregoing reasons:

1. Defendants' Motion to Compel Production of Documents [Paper 84] is GRANTED IN PART AND DENIED IN PART.

2. The Court finds that there was a waiver of Plaintiffs' attorney-client privilege with regard to the December 21 E-mail on December 21, 2005.

3. Defendants may, by November 20, 2006, propound replacement(s) to Requests for Production 27 and 28 consistent herewith.

4. Plaintiffs shall respond timely to such replacement Requests and provide an adequate privilege log, if a privilege is asserted. document.

SO ORDERED, on <u>Thursday, November 9, 2006</u>.

                                              / s /
                                       Marvin J. Garbis
                                United States District Judge